# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SABRINA BRYSON, Individually and As Administratrix of the Estate of VAUGHN ADAM WILSON, JR. | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | **CIVIL ACTION** |
| v. | ) ) ) | **NO. 11-40052-TSH** |
| MILFORD REGIONAL MEDICAL CENTER, INC., UTE K. TAYLOR, RN and AMERICAN MEDICAL RESPONSE OF MASSACHUSETTS, INC. | ) ) ) ) ) | |
| Defendants. | ) ) | |

### MEMORANDUM OF DECISION AND ORDER ON DEFENDANT MILFORD REGIONAL MEDICAL CENTER'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT (Docket No. 79)
**March 27, 2014**

**HILLMAN, DJ.**

### Introduction

This is an action brought by Sabrina Bryson, Individually and as the Administratrix of the Estate of Vaughn Adam Wilson, Jr., (hereinafter "Plaintiff") against Milford Regional Medical Center, Inc. (hereinafter "MRMC" or "the Hospital") for an alleged violation of 42 U.S.C. § 1395dd (the Emergency Medical Treatment and Active Labor Act or "EMTALA"). Count XIII of the Plaintiff's Amended Complaint contains the allegations of a violation of 42 U.S.C. § 1395dd. Count XIII of the Plaintiff's Amended Complaint alleges that MRMC violated EMTALA when it: failed to, 1) treat and/or stabilize Plaintiff's emergency medical condition

prior to transfer to UMASS; and 2) provide Plaintiff and her unborn child with an emergency medical screening examination and treatment. This order addresses Defendant Milford Regional Medical Center's Renewed Motion for Partial Summary Judgment to dismiss Count XIII of the Plaintiff's Amended Complaint.[1]

## Facts

The facts, taken from the summary judgment record and based on the submissions of both parties, are viewed in the light most favorable to Plaintiff, the non-moving party. On October 19, 2009 at 5:15 a.m. Plaintiff experienced severe pain in her abdomen shooting into her back. Plaintiff called her obstetrician who told her to call an ambulance. Plaintiff's fiancé called 911 and Plaintiff went to MRMC via ambulance from her home. Upon arrival at Defendant MRMC, Plaintiff was directed from the Emergency Room to the Obstetric and Gynecological triage area for evaluation. Plaintiff was 34 + weeks pregnant at the time. In the two months prior to this visit, Plaintiff had been to MRMC several times, each time presenting with similar symptoms: vomiting, nausea and low back pain.[2] Plaintiff also has had gastric bypass surgery.

On October 19, 2009, Plaintiff was initially examined by an obstetrician, Dr. Small-Pal. Dr. Small-Pal prescribed pain medications and anti-nausea mediations and Plaintiff was observed and monitored for approximately four hours. At approximately 9:00 a.m., after a second evaluation, Dr. Small-Pal admitted Plaintiff to the labor and delivery unit for observation because the patient's condition had not substantially improved, despite medications; the medical records confirm that Plaintiff's pain level was at 10 out of 10 on the pain scale. At that time Dr.

---

[1] Defendant MRMC originally filed a Motion for Partial Summary Judgment on June 14, 2011 which was opposed by the Plaintiff. At the same time of filing her Opposition, Plaintiff's counsel also filed a Motion pursuant to Fed.R.Civ.P. 56(f) arguing that this Defendant's Motion for Partial Summary Judgment was premature as discovery had not yet taken place. On September 26, 2011 the Court denied that Motion for Partial Summary Judgment, without prejudice.

[2] Face sheets of prior presentations to MRMC on September 7, 2009; September 11, 2009; September 16, 2009; and October 16, 2009.

Small-Pal considered ordering a gastrointestinal consult and a surgical consult. At 9:45 a.m., Plaintiff was examined by a different obstetrician, Dr. Hayley Marshall. Dr. Marshall noted Plaintiff's abdominal pain was worsening and that Plaintiff had previously undergone gastric bypass surgery. Dr. Marshall noted that the vital signs for both Plaintiff and fetus were stable and reassuring and there was no evidence of rupture of membranes.

The medical record further asserts that these persistent symptoms prompted the decision to transfer Plaintiff to a tertiary care center. Defendant MRMC was requesting Plaintiff be transferred directly to UMass Memorial Medical Center's Emergency Department. The decision to transfer Plaintiff to UMass Memorial Medical Center was made at 9:45 a.m.

If surgery was needed for Plaintiff or if an emergency caesarean, MRMC did not have a newborn intensive care unit (NICU) or a bariatric surgeon to address any complications with Plaintiff's previous gastric bypass surgery. Dr. Marshall called Dr. Berry at UMMC's Emergency Department and arrangements were made to transfer Plaintiff directly to UMASS. Plaintiff's transfer was accepted by Dr. Rosenbaum at UMASS. Dr. Marshall completed the Authorization for Transfer form noting that the patient was stable for transfer and the reason for transfer was the Hospital did not have a NICU. Plaintiff accepted the transfer and signed the Consent Form. Plaintiff, accompanied by her fiancé, left the MRMC labor and delivery floor for transport at approximately 10:20 a.m.

Prior to leaving MRMC for her transfer, Plaintiff began vomiting blood. Plaintiff was transported via ambulance by Defendant American Medical Response of Massachusetts, Inc. ("AMR") advanced life support ambulance. Plaintiff arrived at UMass Memorial Medical Center ("UMMC") in critical condition at 11:05 a.m. and upon arrival, was emergently typed and cross-matched for four units of blood. The fetal heart rate was noted to be 60 to 70 beats per minute.

At approximately 11:50 a.m., Plaintiff was transferred to the Operating Room for an emergency caesarian section. Vaughn Adam Wilson, Jr. was born at 11:59 a.m. with no detectible heart beat or respiratory effort; he passed away 11 days later on October 30, 2009. The cause of death was, (a) cardio respiratory failure; (b) hypoxic ischemic encephalopathy, and (c) intra cranial hemorrhage.

## **Discussion**

Summary judgment is appropriate when there is no genuine issue as to any material fact and thus the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994). The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1968). It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. U.S.,* 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 4). The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994) (discussing *Celotex,* 477 U.S. at 325). When ruling on a motion for summary judgment, the court must construe the facts in the light most favorable to the non-moving party. *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003).

If the moving party meets its initial burden, the burden shifts to the non-moving party, which must go beyond the pleadings and submit admissible evidence supporting its claims or

defenses and showing a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324; *Nissan Fire,* 210 F.3d at 1103; *Devereaux,* 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *See Celotex,* 477 U.S. at 323. In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

*EMTALA*

Plaintiffs allege that the Defendant Hospital violated EMTALA by failing to stabilize her emergency medical condition, and failing to properly stabilize her before transferring her to another hospital. Plaintiff contends that EMTALA applies to her case despite the fact that she presented to the Labor and Delivery Department, not to the Emergency Room at MRMC, and disputes that Plaintiff was admitted as an inpatient to MRMC so that EMTALA would not apply. Defendant argues that EMTALA is not applicable in this case because the Plaintiff did not present to the emergency room at MRMC and went directly to Labor and Delivery and that she did not present to the hospital with an emergency medical condition as defined under EMTALA. Defendant further argues that EMTALA does not apply here because Plaintiff was admitted to MRMC as an inpatient. Finally, Defendant argues that if the Court finds that EMTALA does apply here, that MRMC's transfer of Plaintiff complied with EMTALA.

Congress enacted EMTALA in 1996 in response to claims that hospital emergency rooms were refusing to treat patients with emergency conditions but no medical insurance. *Reynolds v. MaineGeneral Health*, 218 F.3d 78, 83 (1st Cir. 2000). EMTALA therefore "is a limited anti-dumping statute, not a federal malpractice statute." *Id*. (internal citations and quotation marks omitted). It creates private rights of action where hospitals violate its mandates. *Correa v.*

5

*Hospital San Francisco*, 69 F.3d 1184, 1190 (1st Cir. 1995); 42 U.S.C. § 1395dd(d)(2). The Court will determine, applying the statute to the undisputed facts on the record, whether in the Plaintiff's presented at MRMC with an emergency medical condition and whether MRMC provided stabilization of that condition and an appropriate transfer under the statute.

*Whether Plaintiff Presented to the Emergency Department*

Defendant argues that EMTALA is not applicable because Plaintiff bypassed the Emergency Room and instead presented to the Labor and Delivery Department. In support of this contention, Defendant cites *Lopez-Soto v. Hawayek*, 175 F.3d 170 (1999). In *Lopez-Soto v. Hawayek*, the First Circuit Court of Appeals held that EMTALA applied to the case of an infant born in the hospital's maternity ward, who suffered a medical emergency shortly after birth. The court reasoned that EMTALA's stabilization and appropriate transfer requirements apply to patients who present with emergency conditions in other parts of the hospital and not just the emergency room. *Id*. at 176-177. The court noted the law's emphasis on preventing patient dumping, which could occur anywhere in the hospital, and its specific inclusion of women in labor, who were likely to present to maternity wards rather than emergency rooms. *Id*. at 176-177. Accordingly, this Court finds that EMTALA applies here because Plaintiff, at 34 weeks pregnant and with a history of gastric bypass surgery and recent visits to MRMC, presented to the Labor and Delivery Department and with what she believed to be a medical emergency.

*Whether Plaintiff Condition Was an "Emergency Medical Condition"*

EMTALA requires that "if an emergency medical condition exists, the participating hospital must render the services that are necessary to stabilize the patient's condition ... unless transferring the patient to another facility is medically indicated and can be accomplished with

6

relative safety." *Correa*, 69 F.3d at 1189 (internal citations and quotation marks omitted); 42 U.S.C. § 1395dd(b) and (c).

The requirements to stabilize or carry out an appropriate transfer come into effect when a hospital determines that a patient has an emergency medical condition. 42 U.S.C. § 1395dd(b)(1). EMTALA defines "emergency medical condition" as:

> a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in –
>
> (i) placing the health of the individual ... in serious jeopardy,
> (ii) serious impairment to bodily functions, or
> (iii) serious dysfunction of any bodily organ or part;....

42 U.S.C. § 1395dd(e)(1)(a).

While Defendant MRMC argues to the contrary, viewed in the light most favorable to the Plaintiff, the Court finds the record replete with evidence to support that that Plaintiff was experiencing an emergency medical condition. Plaintiff was experiencing pain on a level of 10 out of 10 at the 34th week of pregnancy, with recurring vomiting and back pain, and later vomiting blood, coupled with a history of gastric bypass surgery. It appears undisputed that Plaintiff was experiencing severe pain that could possibly place her health in serious jeopardy, and accordingly, the Court finds that Plaintiff's condition amounted to an emergency medical condition.

*Whether Plaintiff Was Admitted to MRMC*

Defendant MRMC next asserts that 42 U.S.C. § 1395dd(b) does not apply to this case because Plaintiff was admitted to the hospital for in-patient care, and that the requirements of 42 U.S.C. § 13955dd(b) end when an individual is admitted for in-patient care. Plaintiff argues that she was not admitted to Defendant MRMC as an in-patient but was admitted only for

observation. A hospital cannot escape liability under EMTALA by admitting a patient with no intention of actually treating the patient, and then discharging or transferring the patient without having met the stabilization requirement. *See Moses v. Providence Hospital*, 561 F.3d 573, 583 (6th Cir. 2009).

A similar case was heard in the First Circuit. In *Lima-Rivera v. UHS of Puerto Rico*, 476 F. Supp.2d 92 (2007), a pregnant woman who was in labor presented with an emergency condition to a hospital's emergency room and delivered a baby in the hospital's operating room. The infant was admitted to the hospital's regular nursery as an inpatient but shortly developed an unstable emergency medical condition. The infant was then transferred in an unstable condition to a different hospital, where he died within a day of transfer. In *Lima-Rivera v. UHS of Puerto Rico*, *supra*, the court held that the plaintiffs had a case under EMTALA even though the infant had been admitted as an inpatient. The Court did not apply 42 C.F.R. § 489.24(d)(2)(i).

Dr. Small-Pal chose to admit Plaintiff – whether it was to admit as an inpatient or to admit for observation only – after it became clear to her that after four hours of evaluation, Plaintiff's condition was not improving. Bryson's admission was far from a "sham admission". Plaintiff not proferred any evidence to show that the admission was not done in good faith, or that the admission was effectuated to avoid obligations under EMTALA. The question of Plaintiff's admission need not be answered, because the case turns on the question of the Plaintiff's appropriate transfer, discussed below.

*Whether Plaintiff Was Stabilized and Appropriately Transferred*

Upon determining that Plaintiff suffered from an emergency medical condition, MRMC was required under EMTALA to either provide treatment to stabilize the condition, or arrange a

transfer that complied with subsection (c) of the statute. 42 U.S.C. § 1395dd(b). EMTALA defines "stabilize" as follows:

> to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility ...

42 U.S.C. § 1395dd(e)(3). "As a corollary to the right to be appropriately screened, EMTALA guarantees patients the right, if an emergency medical condition is determined to exist, to have that condition stabilized before discharge or transfer to another hospital." *Reynolds v. MaineGeneral Health,* 218 F.3d 78, 84 (1st Cir.2000).

When transferring a patient, the physician must sign a certification that "the medical benefits reasonably expected from the provision of appropriate medical treatment at another medical facility outweigh the increased risks to the individual." 42 U.S.C. § 1395dd(c)(1)(A)(ii). This certification must contain a summary of the risks and benefits of the transfer. 42 U.S.C. § 1395dd(c)(1). See *Ramos-Cruz v. Centro Medico Del Turabo*, 642 F.3d 17, 18 (1st Cir. 2011). Further, a transfer is only appropriate where 1) the transferring hospital provides "the medical treatment within its capacity which minimizes the risks to the individual's health," 2) the receiving facility has available space and qualified personnel, as well as agrees to accept the transfer and provide the appropriate treatment, 3) the transferring hospital sends all medical records related to the condition available at the time of transfer, and 4) the patient is transported through qualified personnel and transportation equipment. 42 U.S.C. § 1395dd(c)(2). *Id.* at 18-19.

Plaintiff's stabilization notwithstanding, a hospital may legally transfer someone who has an emergency medical condition which has not been stabilized if one of several conditions has been satisfied. If an individual at a hospital has an emergency medical condition which has not

been stabilized, the hospital may not transfer the patient unless: (1) the patient requests the transfer in writing; or (2) a physician has signed a certification that based upon the reasonable risks and benefits to the patient and the information available at the time, the medical benefits reasonably expected from the provision of appropriate medical treatment at another facility outweigh the increased risks to the individual's medical condition from effecting the transfer. EMTALA also allows such a transfer if, in the absence of a physician, a "qualified person" signs such a certification, which is subsequently countersigned by a physician. *See* 42 U.S.C. § 1395dd(c)(1)(A).

In addition to the obligation of certifying the medical need for transferring patients protected by EMTALA, hospitals also have an obligation to appropriately transfer such patients. *See* 42 U.S.C. § 1395dd(c)(2). The statutory definition of appropriate transfer requires, inter alia, that "transfer [be] effected through qualified personnel and transportation equipment, as required including the use of necessary and medically appropriate life support measures during the transfer." 42 U.S.C. § 1395dd(c)(2)(D). *See also*, *Burditt v. U.S. Dept. of Health and Human Services,* 934 F.2d 1362 (5th Cir. 1991). This statutory requirement has been interpreted as requiring "personnel and transportation equipment that a reasonable physician would consider appropriate to safely transport the patient in question." 934 F.2d at 1372.

The First Circuit has addressed the issue of what constitutes adequate risk minimizing treatment within the capacity of a hospital for purposes of 42 U.S.C. § 1395dd(c)(2)(A) in *Ramos-Cruz,* 642 F.3d 17. In *Ramos-Cruz*, the Court held that EMTALA does not require a hospital to deliver "the feasible specific treatment" that is best, when transferring a patient. *Id*. at 19. The Court ruled that such an interpretation of EMTALA is unsupported by the case law. *Id*. The Court pointed out that prior interpretations of EMTALA in the context of defining

10

"appropriate medical screening" have concluded that it is the "refusal to follow the screening process that violates the statute; faulty screening, in a particular case … does not contravene the statute." *Id*. at 19 quoting *Correa*, 69 F.3d at 1192-93. Applying this to the transfer context, the Court ruled that while failure to comply with transfer procedures would be in contravention of EMTALA, erroneous care or improper decision making while complying with the standard procedure would not. *Id*. The Court then reaffirmed the established tenet that EMTALA does not create a federal malpractice cause of action. *Id*. [3]

The decision made by Dr. Marshall to transfer Plaintiff complies with § 1395dd(c)(1)(A)(ii):

(1) Rule

If an individual at a hospital has an emergency medical condition which has not been stabilized (within the meaning of subsection (e)(3)(B) of this section), the hospital may not transfer the individual unless—

(A) (ii) a physician has signed a certification that based upon the information available at the time of transfer, the medical benefits reasonably expected from the provision of appropriate medical treatment at another medical facility outweigh the increased risks to the individual and, in the case of labor, to the unborn child from effecting the transfer…

§ 1395dd(c)(1).

Dr. Hayley Marshall, the physician who ordered the transfer to UMASS, testified that she made the decision to transfer Plaintiff to UMASS because UMASS had the ability to care for a premature child and to offer gastric bypass surgeons should Plaintiff require that type of surgery. *See* Deposition of Dr. Hayley Marshall, pages 17, 33-34, attached to Defendant's Memorandum as Exhibit L. The medical records in both parties' exhibits establish that Plaintiff received treatment for nausea, vomiting, and back pain. She and the baby were monitored throughout her

---

[3] Specifically, the Court stated, "[T]he Plaintiffs' interpretation (that would allow any unstabilized patient to sue in federal court if he did not receive the correct care prior to transfer) would create a federal malpractice cause of action. … This is entirely inconsistent with our jurisprudence and Congressional intent, as we have previously stated "EMTALA does not create a cause of action for medical malpractice." *Ramos-Cruz*, 642 F.3d at 19, quoting *Correa*, 69 F.3d at 1192.

11

time at MRMC and her prior visits to MRMC for similar symptoms and her gastric bypass surgery was noted. Dr. Marshall signed the Authorization for Transfer authorizing Plaintiff's transfer to UMMC, which was also signed by Plaintiff. Dr. Marshall considered all of the circumstances and determined that Plaintiff needed to be transferred because the benefits of having the NICU and a gastroenterologist available to Plaintiff outweighed the dangers of transportation to UMMC. The process to transfer Plaintiff to UMASS from MRMC was therefore in compliance with requirements set forth in § 1395dd(c)(1)(A)(ii).

EMTALA was intended to protect patients from a hospital's refusal to treat them or a transfer without stabilization. But here, when Plaintiff was treated, admitted as an inpatient or for observation, given a bed and monitored until it was determined that she should be admitted then transferred for better care. Plaintiff was not "dumped" within the meaning of the Act. Any challenges to the standard of care are claims of negligence or malpractice, not a violation of EMTALA.

*Supplemental Claims*

MRMC asks the court to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state medical malpractice claim. A district court may decline to exercise supplemental jurisdiction over a related state-law claim where: "(1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.* at § 1367(c). The court may also decline to exercise supplemental jurisdiction if the retention of the state claims "requires the expenditure of substantial additional judicial time and effort." *Executive Software North America, Inc. v. U.S.*

*Dist. Court for Cent. Dist. of California,* 24 F.3d 1545, 1548 (9th Cir.1994); *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343 (1988); *see also Government Employees Ins. Co. v. Dizol* 133 F.3d 1220, 1224 (9th Cir.1998). It can be an abuse of discretion to decline jurisdiction when factors of judicial economy, convenience, and fairness to the parties militate in favor of retaining jurisdiction. *See Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maintenance, Inc.,* 333 F.3d 923, 926 (9th Cir.2003).

The remaining claims do not involve novel or complicated issues of state law, and as the Court is familiar with the case. Interests of judicial economy, convenience, and fairness to the parties favor of the Court's retaining jurisdiction over the remaining claims.

## **CONCLUSION**

For the reasons stated above, this Court hereby **GRANTS** Defendant MRMC's renewed motion for partial summary judgment (Docket No. 79) as to Count XIII. The claim pursuant to EMTALA is hereby DISMISSED and the case shall proceed with the remaining state-law claims.

SO ORDERED.

/s/ Timothy S. Hillman_____
TIMOTHY S. HILLMAN
U.S. DISTRICT JUDGE